**Revised May 28, 1999**

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 97-21014
_____

GAIA TECHNOLOGIES INCORPORATED; ET AL,

Plaintiffs,

GAIA TECHNOLOGIES INCORPORATED,

Plaintiff-Appellee,

versus

RECYCLED PRODUCTS CORPORATION; ET AL,

Defendants,

DAVID GORDON; PROGRESSIVE CAPITAL CORPORATION; RECONVERSION TECHNOLOGIES INCORPORATED; IRA RIMER; JOEL HOLT; RICHARD CLARK; RECONVERSION TECHNOLOGIES OF TEXAS INCORPORATED,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The corporate defendants Reconversion Technologies of Texas Incorporated ("Retex"), Reconversion Technologies Incorporated ("Retek"), and Progressive Capital Corporation ("Progressive"), and the individual defendants David Gordon, Ira Rimer, Joel Holt, and Richard Clark, appeal the district court's final judgment. We reverse the judgment of the district court and render judgment in favor of the defendants.

I

This is an appeal from a judgment in favor of Gaia Technologies Incorporated ("Gaia") against the corporate and individual defendants. The judgment holds various defendants liable for three state law torts—unfair competition, misappropriation of trade secrets, and tortious interference with prospective contractual relations. Gaia's causes of action involve intellectual property developed initially by James Turner, and now owned by Gaia. Turner devised methods of manufacturing various products from recycled tires. Turner's products included (1) various "hard goods," which included molded boards, fence posts, railroad ties, and buckets, and (2) a flexible porous pipe, which Turner marketed under the name "Leaky Pipe." Turner's inventions resulted in four patents for the hard goods technology, and one trademark for the name "Leaky Pipe." To exploit these inventions, Turner created the Entek Corporation ("Entek"), which he owned.

Turner and Entek filed for bankruptcy. During the bankruptcy proceedings, Banstar Corporation ("Banstar") purchased "all technologies, patents, patent rights, licenses, know-how, trade secrets, trade secret rights, [and] proprietary information," as well as "all trade names,

trademarks, service marks, [and] brand names," from Turner and Entek. Eventually, Gaia purchased the Turner-Entek intellectual property from Banstar. The parties dispute the precise date of Gaia's purchase. After his bankruptcy, Turner worked for defendant Retex. Gaia alleges that Retex began selling Leaky Pipe and using the hard goods technology.[1] Gaia filed the present lawsuit on October 20, 1993, alleging that the defendants' use of the Turner-Entek intellectual property amounted to federal patent and trademark infringement and various Texas law torts.

The jury verdict found the corporate defendants liable for all of Gaia's federal infringement claims, awarding damages totaling $3,972,500. It also found the corporate defendants liable for three state law claims, awarding damages of $125,000 for unfair competition, $0 for misappropriation of trade secrets, and $4,350,000 for tortious interference with prospective contractual relations. The jury found the individual defendants liable for one claim of federal patent infringement, awarding damages of $1,800,000. It found that the individual defendants were not liable for any of Gaia's state law claims. The jury assessed each of the individual defendants punitive damages of $100,000.

The district court modified the jury verdict before entering its final judgment. In its Supplemental Memorandum Opinion, the district court wrote:

> The Court further finds, according to [certain] evidence . . . and testimony . . . that all the defendants, jointly and severally, committed fraud by aiding and abetting James Turner to misappropriate and conceal their use of the trade secret technology and porous pipe. . . . From this evidence and the jury's verdict assessing punitive damages against each of the individual defendants, Gordon, Rimer, Holt, and Clark because the defendants were actually aware of an extreme risk of serious injury to the plaintiff and acted willfully and maliciously, the Court reforms the jury's verdict under FED. R. CIV. P. 49(a) and 58 to conform the evidence and law with the jury's verdict and finds

---

[1] The individual defendants in this appeal were affiliated with Retex at the time of the alleged conduct. Turner was initially a defendant in this case, but he settled with Gaia before trial. As for the other corporate defendants, Retek was Retex's parent company, and Progressive was involved with Retek's efforts to raise money for its operations.

that plaintiff shall further recover from the defendants, jointly and severally, lost capital damages of FOUR MILLION THREE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($4,350,000.00), as a result of the defendants' tortious interference with the plaintiff's prospective customers . . . and as a result of the defendants' misappropriation and concealment of the plaintiff's trade secret information.

Thus the district court held the individual defendants liable for tortious interference with prospective contractual relations and misappropriation of trade secrets, contrary to the jury's finding that the individual defendants were not liable for any state law torts. The district court also overturned the jury's finding that the damages caused by the corporate defendants' misappropriation of trade secrets was $0. Based on these rulings and what remained of the jury verdict, the district court entered a final judgment on March 17, 1995 ("1995 judgment").[2]

The defendants appealed to the Federal Circuit, which reversed the 1995 judgment as to Gaia's federal patent and trademark infringement claims. The Federal Circuit held that in order to have standing under the federal infringement statutes, Gaia must prove that it owned the relevant patents and trademark when it filed suit on October 20, 1993. *See Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 777 (Fed. Cir.), *amended by* 104 F.3d 1296 (Fed. Cir. 1996).[3] Gaia argued to the Federal Circuit that it acquired the patents and trademark from Banstar on August 4, 1991, pursuant to a vote of Banstar's shareholders. Gaia also cited to a written assignment, which transferred the Turner-Entek intellectual property from Banstar to Gaia. Although undated, the assignment stated that its "effective date" was August 4, 1991. However, Gaia did not file the

---

[2] The district court also modified many of the jury's findings on federal patent and trademark infringement. These modifications are not relevant to the present appeal.

[3] The Federal Circuit amended its initial opinion as to whether federal jurisdiction existed over Gaia's state law claims. *See Gaia*, 104 F.3d at 1297.

assignment with the United States Patent and Trademark Office until October 24, 1994, over one year after it filed the present lawsuit.

The Federal Circuit ruled that Banstar did not assign the Turner-Entek patents and trademark to Gaia until after Gaia filed the present lawsuit. *See id.* at 780. It reasoned that the August 1991 shareholder vote demonstrated, at most, an intent to assign the patents and trademark, but that the vote did not itself amount to an assignment. *See id.* at 779. The Federal Circuit also rejected Gaia's argument that the assignment filed in October 1994 could retroactively confer standing simply by professing an "effective date" of August 1991. *See id.* at 779-80. Having extinguished Gaia's federal infringement claims, the Federal Circuit remanded the case to allow the district court to decide whether to exercise supplemental jurisdiction over the state law claims. *See id.* at 781.

On remand, the district court decided to exercise jurisdiction over Gaia's state law causes of action. It entered final judgment on July 18, 1997 ("1997 judgment") based on its initial state law rulings. The district court thus held the corporate defendants liable for all three state law causes of action, and held the individual defendants liable for misappropriation of trade secrets and tortious interference with prospective contractual relations. It also assessed each individual defendant $100,000 in punitive damages.

The defendants timely appealed. On appeal, the individual defendants argue that the district court erred in ho lding them liable for Gaia's state law claims, contrary to the jury verdict. The individual defendants also contend that the district court erred in assessing punitive damages. The corporate defendants argue that the evidence is insufficient to support the jury verdict holding them

liable on the three state law claims.[4]

## II

First, the individual defendants contend that the district court erred by "reform[ing]" the jury verdict. They argue that Federal Rule of Civil Procedure 49(a) ("Rule 49(a)"), relied upon by the district court, does not allow the district court to make findings contrary to the jury verdict.[5] We review *de novo* whether a district court is authorized to make findings under Rule 49(a). *See Askanase v. Fatjo*, 130 F.3d 657, 669 (5th Cir. 1997).

Nothing in the text of Rule 49(a) authorizes a district court to reform a jury's decision on issues submitted to the jury. Rule 49(a) allows the district court to make its own findings only as to issues not submitted to the jury. *See* FED. R. CIV. P. 49(a) ("As to an issue omitted [from the jury instructions] . . . the court may make a finding."). Furthermore, Rule 49(a) does not permit a district court to make findings contrary to the jury verdict. *See Askanase*, 130 F.3d at 670 ("Appellant correctly states that a Rule 49(a) finding cannot be inconsistent with the jury verdict."); *see also*

---

[4] In addition, the corporate defendants argue that (1) the Federal Circuit's decision is the law of the case and therefore precludes liability for Gaia's state law causes of action, (2) the district court erred by finding "fraud" in its Supplemental Memorandum Opinion, (3) the evidence was insufficient to establish liability against defendants Retek and Progressive, (4) the district court erred by entering judgment while Chapter 11 bankruptcy proceedings were pending, (5) the district court erred in awarding attorneys' fees, and (6) the district court erred in calculating prejudgment interest. We need not address these issues, however, in light of our ruling as to the corporate defendants' other argument.

[5] Preliminarily, the individual defendants contend that we should treat the jury verdict as a general verdict accompanied by interrogatories, governed by Rule 49(b), as opposed to a special verdict, governed by Rule 49(a). *Compare* FED. R. CIV. P. 49(b) ("General Verdict Accompanied by Answer to Interrogatories") *with* FED. R. CIV. P. 49(a) ("Special Verdicts"). According to the defendants, Rule 49(b) affords greater deference to a jury's finding than Rule 49(a). We need not address this contention, however, because we conclude that not even Rule 49(a) authorizes the district court's modification of the jury verdict. Gaia does not contend that Rule 49(b) provides an alternative ground for upholding the district court's reformation.

*Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991) (holding that "under Rule 49(a), the trial court simply cannot choose to ignore a legitimate finding that is part of the special verdict"). Here, the district court submitted the elements of Gaia's state law claims to the jury, and the jury found that Gaia failed to prove any of the elements as to the individual defendants. Thus Rule 49(a) does not authorize the district court to reform the jury's state law findings in order to hold the individual defendants liable for Gaia's state law causes of action.[6]

Indeed, Gaia does not argue on appeal that Rule 49(a) authorizes the district court's reformation of the jury verdict, but rather urges us to affirm on other grounds. Gaia contends that Federal Rule of Civil Procedure 50 ("Rule 50") justifies the district court's action. Rule 50 allows a court to enter judgment as a matter of law where there exists "no legally sufficient evidentiary basis for a reasonable jury to find" as it did. FED. R. CIV. P. 50(a)(1). Gaia asserts that it presented strong evidence that the individual defendants committed the state law torts, and that the defendants responded with no "serious evidence" to the contrary.

The district court did not base its ruling on Rule 50. It expressly relied on Rule 49(a) and Rule 58. The district court certainly did not apply the high standard required to enter judgment as a matter of law contrary to a jury verdict. It did not find that the individual defendants committed state law torts "as a matter of law," nor did it rule that there was "no legally sufficient evidentiary basis for a reasonable jury to find" otherwise. FED. R. CIV. P. 50(a)(1). To the contrary, the district

---

[6] Although the district court also cites Federal Rule of Civil Procedure 58 ("Rule 58") as a basis for reforming the verdict, this rule does not authorize the district court's action. Rule 58 merely provides that a court may issue a judgment pursuant to a jury verdict. *See* FED. R. CIV. P. 58 (providing that "upon a special verdict or a general verdict accompanied by answers to interrogatories, the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it"). It by no means empowers a court to issue judgment contrary to a jury verdict. Gaia does not contend that Rule 58 permits the district court's reformation.

court rendered an independent finding that the individual defendants were liable for two state law torts. Thus the district court did not address whether Rule 50 authorizes its modification of the jury verdict.

We may, however, consider alternative grounds for upholding the district court's decision, provided the record supports such alternative grounds. *See Cox v. Sunbelt Sav. Ass'n*, 896 F.2d 957, 959 n.2 (5th Cir. 1990). A court may enter judgment as a matter of law under Rule 50 only where there exists "no legally sufficient evidentiary basis for a reasonable jury to find" otherwise. FED. R. CIV. P. 50(a)(1). We find that there exists a legally sufficient basis for a reasonable jury to find that the individual defendants did not commit misappropriation of trade secrets or tortious interference with prospective contractual relations. *See infra* Part IV.[7] Thus Rule 50 does not authorize the district court's modifications to the jury verdict.

For these reasons, we find that the district court erred in reforming the jury verdict. In the alternative to upholding the district court's judgment as to the individual defendants, Gaia urges us to remand for a new trial. According to Gaia, the jury's conclusion that the individual defendants are not liable for state law torts is inconsistent with its finding that the conduct of the individual defendants warrants punitive damages. Gaia is correct that "[i]f the jury gives inconsistent answers to special interrogatories, the case must be remanded for a new trial." *Willard v. The John Hayward*, 577 F.2d 1009, 1011 (5th Cir. 1978). However, a jury's answers "should be considered inconsistent . . . *only* if there is no way to reconcile them." *Id.* (emphasis added). Thus we ask "whether the

---

[7] There, we conclude that Gaia failed even to present sufficient evidence to uphold the jury verdict against the corporate defendants on the state law claims. This finding necessarily forecloses Gaia's argument that the evidence presented was so overwhelming as to mandate judgment as a matter of law against the individual defendants. The same shortcomings that prevent judgment against the corporate defendants also prevent judgment against the individual defendants.

jury's answers can be said to represent a logical and probable decision on the relevant issues as submitted." *Id.* (quotations and citations omitted).

Gaia argues that the jury could not logically have found the individual defendants' conduct so "shocking and offensive" as to deserve punitive damages without also finding the individual defendants liable for the state law causes of action. We disagree. The instruction on punitive damages was located at the end of the jury charge. It began, "If you have found that any of the defendants are liable for the plaintiff's injuries, you may also award punitive damages . . . ." The instruction did not specify that the jury must find the defendants liable under state law in order to award punitive damages. The jury reasonably could have viewed the punitive damages instruction as applying to both the state law and federal law causes of action. While the jury did not find the individual defendants liable for Gaia's state law claims, it did hold them liable for federal law patent infringement.[8] Thus the jury, under a logical reading of the instruction, could have based its award of punitive damages on the conduct it found to constitute federal law patent infringement. It could logically have found such conduct by the individual defendants to be "shocking and offensive," without also finding liability under state law.

By reading the jury's punitive damages award as stemming from the federal law claims, we are able to reconcile any inconsistencies alleged by Gaia. Therefore, the jury's award of punitive damages is not inconsistent with its finding that the individual defendants were not liable for any state law causes of action. Accordingly, we reject Gaia's request for a new trial.

III

---

[8] The jury's finding that the individual defendants were liable for patent infringement was, as discussed above, reversed by the Federal Circuit because Gaia lacked standing to sue. *See Gaia*, 93 F.3d at 780.

The individual defendants also challenge the district court's award of punitive damages. They argue that a defendant may not be assessed punitive damages without a valid finding that he or she is liable for an underlying substantive cause of action. After the jury issued its verdict, of course, the Federal Circuit ruled that the individual defendants were not liable for any federal law causes of action. We have now held that the individual defendants are not liable for any state law causes of action. Thus the individual defendants are co rrect that there is no finding of liability upon which punitive damages may be based.

Gaia insists that state law provides a basis for punitive damages. Whether substantive liability is a necessary predicate to an award of punitive damages is a question of Texas state law, which we review *de novo*. *See Hadley v. VAM P T S*, 44 F.3d 372, 374-75 (5th Cir. 1995). The Texas Supreme Court has made clear that "'recovery of punitive damages requires a finding of an independent tort with accompanying actual damages.'" *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998) (quoting *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex. 1995); *see also Hadley*, 44 F.3d at 375 ("Texas law is uniform and clear that a finding of actual damages is a prerequisite to receipt of punitive damages."). Therefore, "[w]ithout a finding of tort damages, [a plaintiff] is not entitled to any award of punitive damages." *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex. 1993). Because we have reinstated the jury's finding that the individual defendants are not liable for any state law causes of action, there is no basis for awarding punitive damages. We therefore reverse the district court's award of punitive damages.

IV

The corporate defendants argue that the evidence presented at trial was insufficient to support the jury verdict against them on Gaia's state law causes of action. They therefore contend that the

district court erred in denying their various Rule 50 motions for judgment as a matter of law. The district court may enter judgment as a matter of law under Rule 50 where "there is no legally sufficient evidentiary basis for a reasonable jury" to find otherwise. FED. R. CIV. P. 50.

A

Preliminarily, the parties dispute the proper standard of review. When a party contests a jury verdict on the grounds that the evidence is legally insufficient, we ordinarily apply *de novo* review, making the same inquiry required of the district court. *See Nero v. Industrial Molding Corp.*, 167 F.3d 921, 925 (5th Cir. 1999). However, the standard of review changes if the appellant failed to contest the sufficiency of the evidence to the district court through timely motions under Rule 50. *See Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996). Failure to request Rule 50 relief from the district court "may result in a waiver of the right to challenge the sufficiency of the evidence." *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996). When a party waives the issue of evidentiary sufficiency, we review the jury verdict only for "plain error." *Polanco*, 78 F.3d at 974. Gaia contends that we must apply plain error review, because the corporate defendants never filed a Rule 50 motion following the 1997 judgment.

The corporate defendants filed Rule 50 motions for judgment as a matter of law at several stages in the proceedings. They moved for judgment as a matter of law at the close of Gaia's evidence. They also moved for judgment as a matter of law at the close of all the evidence. Finally, they filed a renewed motion for judgment as a matter of law after the district court issued its 1995 judgment. In each motion, the corporate defendants argued that the evidence presented was insufficient to hold them liable for Texas law unfair competition, misappropriation of trade secrets, or tortious interference with prospective contractual relations. However, the corporate defendants

-11-

never requested Rule 50 relief following the district court's 1997 judgment, the one presently before us. This failure, Gaia argues, constitutes a waiver of the corporate defendants' right to challenge the sufficiency of the evidence.

As support, Gaia cites *Daigle v. Liberty Life Insurance Co.*, 70 F.3d 394, 397 n.2 (5th Cir. 1995), which states in *dicta*: "When an insufficiency of evidence issue is not raised before the district court through Rule 50(a) and Rule 50(b) motions, the standard of review on appeal is plain error." Gaia argues that *Daigle*'s reference to Rule 50(b) mandates that, in order to contest the sufficiency of the evidence on appeal, an appellant must have sought Rule 50 relief after the trial court issued the judgment being appealed. *Daigle*'s words, however, do not sustain such a reading. Rule 50(b) allows a party to renew its motion for judgment as a matter of law, provided that it timely filed an initial motion for judgment as a matter of law under Rule 50(a). *See* Fed. R. Civ. P. 50(b). Although Rule 50(b) permits a party to renew its motion as late as ten days after the judgment is entered, it does not proscribe filing a renewed motion before judgment is entered. *See id.* ("The movant may renew its request for judgment as a matter of law no later than 10 days after the entry of judgment . . . ."). We therefore see no reason to read *Daigle* as requiring the corporate defendants to have filed a Rule 50(b) motion after the district court entered its 1997 judgment. Applying *Daigle*'s *dicta* literally, the corporate defendants preserved their right to contest the sufficiency of the evidence on appeal, because they challenged the sufficiency of the evidence "through Rule 50(a) and Rule 50(b) motions." *Daigle*, 70 F.3d at 397 n.2. The defendants' motion at the close of Gaia's evidence was brought under Rule 50(a), and their motion following the 1995 judgment was brought under Rule

-12-

50(b).[9]

Thus we find that the defendants have not waived their right to challenge the sufficiency of the evidence. We will review the district court's denial of their motions for judgment as a matter of law *de novo*. *See Polanco*, 78 F.3d at 974.

B

Having established the standard of review, we now turn to whether the record in this case provides a "legally sufficient evidentiary basis for a reasonable jury to find" the corporate defendants liable for unfair competition, misappropriation of trade secrets, and tortious interference with prospective contractual relations. FED. R. CIV. P. 50(a)(1). We examine the sufficiency of the evidence under the standard of *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc). *See*

---

[9] Moreover, we feel that *Daigle*'s *dicta* mischaracterizes our Rule 50 precedent. We have never required a party to file a Rule 50(b) motion in order to preserve its right to claim insufficiency of the evidence on appeal, so long as it has filed a Rule 50(a) motion at the close of all the evidence. To date, our cases have held only that a party may waive its right to appeal when it "fail[s] to move for judgment as a matter of law *at the conclusion of all the evidence*." *Polanco*, 78 F.3d at 974 (emphasis added); *see also Scottish Heritable Trust*, 81 F.3d at 610 (holding that "failure to move for judgment as a matter of law at the conclusion of all the evidence may result in a waiver of the right to challenge the sufficiency of the evidence"). *But see Varda, Inc. v. Insurance Co. of N. Am.*, 45 F.3d 634, 638 (2d Cir. 1995) ("To preserve for appeal a challenge to the denial of a pre-verdict motion for judgment as a matter of law, a movant must renew that motion after the verdict."). Rule 50 motions at the close of all the evidence arise under Rule 50(a). *See United States ex rel. Wallace v. Flintco*, 143 F.3d 955, 960 (5th Cir. 1998) (describing motions for judgment as a matter of law at the conclusion of all the evidence as arising under Rule 50(a)); *compare* Fed. R. Civ. P. 50(a)(2) ("Motions for judgment as a matter of law may be made at any time before submission of the case to the jury.") *with* Fed. R. Civ. P. 50(b) (allowing a renewed motion for judgment as a matter of law "[i]f, for any reason the court does not grant a motion for judgment as a matter of law made at the close of all the evidence"). Indeed, the case on which *Daigle* relies, *Purcell v. Seguin State Bank & Trust Co.*, 999 F.2d 950, 956-57 (5th Cir. 1993), addresses solely whether a party is required to move for judgment as a matter of law at the close of all the evidence. *See id.* at 956. In the present case it is undisputed that the defendants filed a Rule 50 motion at the close of the evidence.

*Burger v. Central Apartment Management, Inc.*, 168 F.3d 875, 877 (5th Cir. 1999).[10]

> Under *Boeing*, there must be a conflict in substantial evidence to create a jury question. Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. Consequently, a mere scintilla of evidence is insufficient to present a question for the jury. Even if the evidence is more than a scintilla, *Boeing* assumes that some evidence may exist to support a position which is yet so overwhelmed by contrary proof as to yield to a [motion for judgment as a matter of law].

*Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc) (quotations and citations omitted). Applying this standard, we address each of Gaia's state law causes of action.[11]

C

The corporate defendants argue that the evidence is legally insufficient to support the jury verdict holding them liable for unfair competition under Texas law. "To prevail on an unfair competition claim, a plaintiff must establish two elements: (1) the plaintiff's trade name has acquired a secondary meaning through usage; and (2) the similarity of the name used by the defendant would be likely to confuse the public." *Associated Tel. Directory Publishers, Inc. v. Five D's Publ'g Co.*, 849 S.W.2d 894, 898 (Tex. App.—Austin 1993, no writ). Thus under Texas law, a plaintiff must prove that the trade name wrongfully used by the defendant is in fact "the plaintiff's trade name." *Id.*

---

[10] Although we have since overruled *Boeing* on other grounds, *see Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc), *Boeing* remains the standard by which we evaluate motions for judgment as a matter of law. *See Burger*, 168 F.3d at 877.

[11] To determine the substantive law governing Gaia's state law claims, we look to final decisions of the state's highest court. *See Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992). "When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Id.* It is proper to look to decisions of lower state courts when making an "*Erie*-guess" as to how a state's highest court would decide an issue. *See Shanks v. AlliedSignal*, 169 F.3d 988, 993 n.7 (5th Cir. 1999).

Gaia contends that evidence in the record demonstrated that it owned the "Leaky Pipe" trade name when it filed the present lawsuit in October 1993.[12]

First, Gaia cites to the minutes of a Banstar shareholder meeting that took place on August 4, 1991. At that meeting, the shareholders "voted to sell 100% of the outstanding stock of the Corporation to Gaia Technologies, Inc." The minutes provided: "This sale will include all assets and liabilities of the Corporation and any interest in the contracts dealing with the purchase of the assets of Entek Corporation or James Turner . . . ." At most, the shareholder vote indicates Banstar's intent to assign the Entek-Turner assets. However, it cannot by itself assign anything at all to Gaia. *See Safeway Managing Gen. Agency v. Cooper*, 952 S.W.2d 861, 867 (Tex. App.—Amarillo 1997, no writ) ("[O]ne party may not unilaterally create a binding contract."); *DeMello v. NBC Bank-Perrin Beitel*, 762 S.W.2d 379, 382 (Tex. App.—San Antonio 1988, no writ) (holding that one party's indication that a sale has been executed does not prove a contract).[13] Even if the shareholder vote is sufficient to raise an inference that the assignment was performed shortly thereafter, we find any such inference "so overwhelmed by contrary proof" as to warrant judgment as a matter of law. *Rhodes*, 75 F.3d at 993. In August 1993, two years after the alleged assignment occurred, Banstar represented to the bankruptcy court that it still held title to the patents it had acquired from the

---

[12] Although our analysis focuses on whether Gaia owned the "Leaky Pipe" trade name, we do not mean to suggest that under Texas law, a plaintiff must actually *own* a trade name in order to make out a cause of action for unfair competition. We need not predict whether Texas courts would permit unfair competition suits by plaintiffs with less than an ownership interest in a trade name. In this case, the only interest Gaia claims to have had in the "Leaky Pipe" trade name is ownership of the name pursuant to Banstar's asset transfer.

[13] We note that the Federal Circuit reached the same conclusion in assessing whether the Banstar shareholder vote effected an assignment of the federal patents and trademark under federal law. *See Gaia*, 93 F.3d at 779.

Entek-Turner bankruptcy. If the assignment suggested by the shareholder minutes had actually occurred, then Banstar could not have made such a representation truthfully. More importantly, in November 1993, weeks after Gaia filed the present lawsuit, Banstar and Gaia entered into a cross-licensing agreement that listed Banstar as the owner of the Turner-Entek patents. This evidence also negates any inference that Banstar assigned the Turner-Entek intellectual property to Gaia pursuant to the August 1991 shareholder vote.

Second, Gaia cit es to a written assignment of assets that was filed with the United States Patent and Trademark Office on October 24, 1994, over a year after Gaia filed the present lawsuit. Although the assignment itself was undated, it provided that "[t]he effective date of this Assignment is August 4, 1991." Gaia points to no evidence indicating when this written assignment was actually executed. Thus there is no evidence supporting Gaia's claim that this assignment was executed prior to Gaia filing this lawsuit. Nor does the written assignment's August 1991 effective date raise an inference that Banstar and Gaia had at least reached an oral agreement in 1991. For the reasons stated above, we find any such inference overwhelmed by Banstar's August 1993 representation to the bankruptcy court and the Banstar-Gaia cross-licensing agreement in November 1993.[14]

We therefore conclude that no reasonable jury could have concluded that "Leaky Pipe" was Gaia's trade name for purposes of Texas law unfair competition. Accordingly, we find that the evidence failed to support the jury verdict holding the corporate defendants liable for unfair competition.

D

---

[14] Gaia also argues that portions of Raymond Kerr's trial testimony proves that Gaia acquired the Turner-Entek intellectual property on August 4, 1991. The portion cited by Gaia contains no testimony relevant to this fact.

The corporate defendants also argue that Gaia failed to produce sufficient evidence of trade secret misappropriation under Texas law. Gaia responds by citing evidence that the corporate defendants assembled a promotional brochure, which advertised the same technology ultimately acquired by Gaia. To establish misappropriation of a trade secret, a plaintiff must show that (1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff. *See Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994).

"A trade secret is any formula, pattern, device or compilation of information used in a business, which gives the *owner* an opportunity to obtain an advantage over his competitors who do not know or use it." *Id.* at 628 (emphasis added). As discussed above in the context of the "Leaky Pipe" trade name, Gaia has produced insufficient evidence that it acquired any intellectual property from Banstar before it filed the present lawsuit. Thus Gaia has failed to prove that it owned any of the trade secrets underlying its misappropriation claim.

Furthermore, Gaia fails to cite any evidence that the corporate defendants "misappropriated" that technology from Gaia, that is, discovered the trade secrets by breaching a confidential relationship or by other improper means. *See id.* at 627. Rather, Gaia simply cites evidence that the technology advertised by the corporate defendants was similar to the Turner-Entek technology eventually acquired by Gaia. On this point, we find the case of *GeoChem Tech Corp. v. Verseckes*, 929 S.W.2d 85 (Tex. App.—Eastland, 1996), *rev'd on other grounds*, 962 S.W.2d 541 (Tex. 1998), instructive. The plaintiff in *Verseckes* purchased certain trade secrets from a company called HGS. *See id.* at 91. The defendant, a former employee of HGS, allegedly made use of that technology in violation of a confidentiality agreement he had signed with HGS. *See id.* The court ruled that such

-17-

facts could not make out a claim for misappropriation of trade secrets. It reasoned: "While a confidential relationship might have existed between [the defendant] and . . . HGS, the summary judgment evidence shows that no relationship, confidential or otherwise, existed between [the plaintiff and defendant]." *Id.* Likewise, Gaia presents no evidence of a confidential relationship between it and the corporate defendants that would support a claim for misappropriation of trade secrets. Gaia fails to prove that the corporate defendants breached any confidential relationship with Gaia in acquiring the alleged trade secrets, or that the corporate defendants improperly discovered the trade secrets from Gaia.[15]

E

Finally, the corporate defendants argue that Gaia presented insufficient evidence of tortious interference with prospective contractual relations. The elements of tortious interference with prospective contractual relations are: (1) there was a reasonable probability that the plaintiff would have entered into a contractual relationship, (2) the defendant committed a malicious and intentional act that prevented the relationship from occurring, with the purpose of harming the plaintiff, (3) the defendant lacked privilege or justification to do the act, and (4) actual harm or damage resulted from the defendant's interference. *See Thrift v. Hubbard*, 44 F.3d 348, 356-57 (5th Cir. 1995) (citing *Exxon Corp. v. Allsup*, 808 S.W.2d 648, 659 (Tex. App.—Corpus Christi 1991, writ denied).

Gaia argues that the defendants' tortious conduct consisted of (1) the corporate defendants' marketing and use of the disputed technology, and (2) the corporate defendants' filing of a lawsuit

---

[15] We note additionally that, to the extent that any of the trade secrets underlying Gaia's misappropriation claim are covered by the four patents, they are no longer "trade secrets" under Texas law. *See Luccous v. J.C. Kinley Co.*, 376 S.W.2d 336, 340 (Tex. 1964); *see also Frey*, 20 F.3d at 629 (citing *Luccous* for the proposition that a "patent grant automatically constitutes full disclosure of a patented process and cannot be protected as a trade secret").

in Oklahoma. However, Gaia fails to cite any evidence that the corporate defendants acted maliciously, as is required by the second element of tortious interference with prospective contractual relations. Indeed, Gaia does not even address the issue of malice in its appellate brief. It contends, mistakenly, that it need only establish that the defendants' interference was "willful and intentional." Although this argument is correct for tortious interference with existing contracts, it is not correct for tortious interference with prospective contracts, which is the basis for the jury's finding in this case. *See Thrift*, 44 F.3d at 357 ("These two torts differ primarily in that interference with prospective relations requires the plaintiffs to prove both that they had a reasonable probability of obtaining a contract and that the defendant acted with malice.") (footnote omitted).

The evidence that Gaia cites is insufficient to establish malice for purposes of tortious interference with prospective contractual relations. An act is deemed malicious if it is "done intentionally without just cause or excuse." *Allsup*, 808 S.W.2d at 659; *see also RRR Farms, Ltd. v. American Horse Protection Ass'n*, 957 S.W.2d 121, 131 n.6 (Tex. App.—Houston [14th Dist.] 1997, writ denied). To establish that a defendant acted intentionally, the plaintiff must prove, at the very least, that the defendant "had knowledge of the prospective contractual relationship he was accused of blocking." *Verkin v. Melroy*, 699 F.2d 729, 732 (5th Cir. 1983). As to Gaia's allegation that the corporate defendants' use of the technology interfered with its prospective contracts, there is no evidence that the defendants were even aware of any prospective contracts involving Gaia at the time Gaia filed its lawsuit. Gaia argues that the corporate defendants' contact with Gaia's prospective customers proves that the corporate defendants knew about Gaia's potential relationships. Assuming that the evidence establishes such contact, the record contains no evidence that the corporate defendants thereby learned of Gaia's potential contractual relationships.

-19-

Furthermore, there is no evidence that the corporate defendants used the disputed technology with the intent of thwarting Gaia's prospective contracts.

As to the Oklahoma lawsuit, Gaia provides no evidence that the defendants acted with malice towards Gaia. Retex[16] filed the Oklahoma lawsuit many months after Gaia filed the present lawsuit. Retex did not sue Gaia, nor does Retex's complaint mention Gaia or Banstar. Retex did, however, sue certain individuals and corporations ("Oklahoma defendants"), who were either involved with or were allegedly negotiating with Gaia. In the Oklahoma lawsuit, Retex alleged that various Oklahoma defendants had breached confidentiality agreements with Retex involving Retex's technology. Retex also alleged that the Oklahoma defendants had defamed Retex by stating falsely that Retex had misappropriated certain technology and that Retex was infringing on a patent owned by some of the Oklahoma defendants.

Gaia has failed even to argue that the Oklahoma lawsuit was filed "without just cause or excuse," as is required for a finding of malice. *RRR Farms*, 957 S.W.2d at 131 n.6; *Allsup*, 808 S.W.2d at 659. Gaia merely states in its brief, without citation to the evidence, that "the Appellants' lawsuit was calculated to interfere and succeeded in doing so." This conclusory allegation is not competent evidence. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Even if it were, it would fail to establish that the corporate defendants acted without cause or excuse.

Indeed, Gaia cites no evidence in the record sufficient to support a finding that Retex filed the Oklahoma lawsuit maliciously. The record contains no evidence that the confidentiality agreements on which the Oklahoma lawsuit was based were invalid or otherwise unenforceable. As to Retex's

---

[16] Retek was also a plaintiff in the Oklahoma lawsuit.

defamation claims in the Oklahoma lawsuit, Gaia presents no evidence that Retex made such claims without cause or excuse. Gaia does not assert, for example, that the Oklahoma defendants never made the defamatory statements alleged by Retex. In sum, Gaia presents insufficient evidence that Retex acted with malice towards Gaia in filing the Oklahoma lawsuit.

V

Accordingly, we reverse the judgment of the district court and render judgment in favor of the defendants.

S:\OPINIONS\PUB\97\97-21014.CV0
April 28, 2004 (1:37pm)