Revised May 11, 2000

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 99-40469**

_____

**HERMAN THRELKELD and MARY THRELKELD,**

**Plaintiffs-Appellees,**

**VERSUS**

**TOTAL PETROLEUM, INC.,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

May 5, 2000

Before JOLLY and DeMOSS, Circuit Judges, and DOWD,[*] District Judge.

DeMOSS, Circuit Judge:

In this premises liability case, which was tried to a jury verdict in favor of Plaintiffs Herman and Mary Threlkeld, Total Petroleum, Inc. ("Total") appeals from the final judgment entered by the district court, Magistrate Judge Wendell C. Radford, presiding, as well as from the district court's denial of Total's

_____

[*] District Judge of the Northern District of Ohio, sitting by designation.

motion for judgment as a matter of law, or alternatively, for a new trial. For the reasons which follow, we find that the district court erred in denying Total's motion for judgment as a matter of law; consequently, we will REVERSE the judgment entered by the district court and REMAND this case to the district court for entry of a judgment in favor of Total Petroleum.

## I. BACKGROUND

The Threlkelds allege that on July 24, 1996, Herman Threlkeld slipped and fell in the restroom of a convenience store owned and operated by Total Petroleum ("Total") because there was water on the floor of the restroom, and that Total knew or should have known of the presence of the water. Total seeks to have the judgment entered against it reversed and judgment rendered in its favor on the basis that the Threlkelds failed to present any evidence of Total's actual or constructive knowledge of the presence of the alleged water.

Our review of the record evidence reveals the following pertinent facts. Approximately two years before the slip and fall involved herein, Herman Threlkeld was injured in a bus accident while at work. He experienced severe pain and swelling in his right leg, and his condition continued to deteriorate, resulting in increased pain, extreme swelling, and discoloration of his leg. He

was eventually diagnosed with reflex sympathetic dystrophy (RSD)[1] of the right leg.

In the two years following his accident, Herman Threlkeld experienced chronic pain in his right leg and could only ambulate with the assistance of crutches or a wheelchair. During these two years, he also tirelessly searched for medical treatments in an effort to cure, but in any event to at least control the painful symptoms of his RSD. On July 1, 1996, he traveled to Lubbock, Texas for yet another new treatment, the implantation of a sciatic catheter.[2] The catheter proved to be quite effective, but after returning home, Mr. Threlkeld developed a rash on his right leg which caused him to schedule a return trip to Lubbock for examination.

On July 24, 1996, on the return trip home from the follow-up examination in Lubbock, the Threlkelds stopped at a Total convenience store in Mesquite, Texas just after 11:00 a.m. Relying on the assistance of his crutches, Mr. Threlkeld entered the store to use the restroom. The restroom's rectangular dimensions measured approximately 4'11" by 7'. Upon entering the restroom, Mr. Threlkeld did not notice any water on the floor. He crossed

---

[1] RSD is a debilitating nerve condition typically characterized by intense pain which may also be accompanied with dramatic swelling, redness, increased temperature, and limited mobility of the affected limb.

[2] This catheter would continuously release medication directly to his sciatic nerve.

the floor of the restroom and used the urinal.  As he approached the sink to wash his hands, he claims to have noticed water on the sink and on the floor beneath the sink.  In an effort to avoid the water, he stood "a couple of feet back" from the sink to wash his hands.

After he washed his hands, Mr. Threlkeld determined that he would use the commode, and he used his crutches to make his way over to an enclosed stall.  He opened the stall door and alleges he found that the commode had not been flushed by the previous patron and that the toilet seat and surrounding floor were splattered with what appeared to be urine.  He changed his mind about using the commode.

So, Mr. Threlkeld turned on his crutches to make his way out of the restroom.  As he took his last stride out of the restroom, his left crutch slipped out from under him, and he fell into the door.  As the door opened outwards, Threlkeld ended up on the floor across the threshold, with his torso in the hallway outside of the restroom, and his legs remaining inside the restroom.  By Mr. Threlkeld's account, he fell at approximately 11:15 a.m.

As Threlkeld lay on the floor, he contends that he first noticed that the restroom floor, from the sink all the way to the door sill, which area he crossed on his way in, was covered in water.  Mrs. Threlkeld, who was in the women's restroom at the time of the fall, heard the commotion and came to her husband's aid. The two Total employees on duty at the time, Chasity Arnold and

4

Patricia Shaver, also came to Mr. Threlkeld's aid.

The employees paged Mike Matthews, Total's district supervisor, and Wyvonne Goodwin, Total's regional safety coordinator. Ms. Goodwin was, by coincidence, in the area that morning conducting safety inspections of Total's local stores. Mr. Threlkeld was transported by ambulance to a local hospital, and was accompanied by Mrs. Threlkeld and Ms. Goodwin. Mr. Threlkeld was treated and released from the hospital, and he and his wife returned to their home that afternoon.

Total's employees testified that the restroom had been both cleaned and inspected in the hours before Mr. Threlkeld's fall. Ms. Goodwin testified that she thoroughly cleaned the restroom the previous night, that she returned the following morning, and that between the hours of 8:00 a.m. and 10:00 a.m., she conducted a safety committee inspection of the entire store, including the restroom. The two employees in the store that morning also testified that they had inspected the restroom once every hour throughout the morning, and had in fact cleaned the restroom between the hours of 9:00 a.m. and 10:00 a.m. They stated that the last inspection of the restroom before Mr. Threlkeld's 11:15 a.m. fall occurred between 10:30 a.m. and 11:00 a.m.

Ms. Goodwin and Ms. Arnold, who were present with Mr. Threlkeld as he lay on the floor, denied that the restroom floor was in the condition described by Mr. Threlkeld; that is, "covered with water from door to sink." Ms. Goodwin and Ms. Arnold both

5

stated that Total's policy was to inspect the restroom every half hour. Total's employees testified that safety issues were reportedly of heightened importance to the store manager of the particular Total store in question as she was the former head of Total's district safety committee, and her store was in close proximity to the regional office, resulting in the occasional surprise visit from regional managers. According to Total, prior to Threlkeld's fall, there had not been one reported slip and fall at that Total store in the entire eight-year period it was owned by Total.

Within several days of the fall, Mr. Threlkeld's RSD symptoms returned in his right leg. Doctors testified that the fall may have exacerbated the RSD in his leg for as many as six months, and that he now had RSD in his left wrist. After that six month period, and despite continued treatment and therapy, the RSD symptoms in Mr. Threlkeld's leg have remained essentially unchanged from their level of intensity before the fall.

The Threlkelds filed suit against Total in the federal district court for the Eastern District of Texas on February 7, 1997. Jurisdiction was proper in the district court under 28 U.S.C. § 1332, based upon the complete diversity of citizenship between the parties.[3] The Threlkelds alleged that Total

---

[3] When the complaint was filed, the Threlkelds were residents of the State of Texas and Total Petroleum was a Michigan corporation with its principal place of business located in Denver, Colorado. Additionally the amount in controversy exceeded the

negligently failed to maintain the restroom floor in a reasonably safe condition, failed to remove the water, and failed to warn Mr. Threlkeld of the water. Total denied that it had actual or constructive knowledge of the alleged water and that the damages, if any, were proximately caused by Mr. Threlkeld's own negligence.

The parties consented to conduct all proceedings before a magistrate judge, and the case was thereafter assigned to the docket of Judge Wendell C. Radford. The case was tried to a jury, and at the close of the Threlkelds' case, Total moved for judgment as a matter of law. Judge Radford denied Total's motion. The jury found Total to be 52% negligent and Mr. Threlkeld to be 48% negligent. The jury then awarded Mr. Threlkeld a total of $616,000 for his injuries, lost earning capacity, and pain and suffering, and it awarded Mrs. Threlkeld a total of $100,000 for loss of consortium, loss of household services, and nursing care.

Judge Radford entered a judgment in accordance with the jury's verdict on October 20, 1998, awarding Mr. Threlkeld an adjusted $374,725 and Mrs. Threlkeld an adjusted $60,828.80. Total again moved for judgment as a matter of law, or alternatively for a new trial, arguing that the Threlkelds failed to establish that Total had actual or constructive knowledge of the water, that there was no competent evidence of Mr. Threlkeld's loss of earning capacity, and that Mrs. Threlkeld was not entitled to recover the value of

$75,000 jurisdictional threshold exclusive of interest and costs.

7

her nursing services.  The district court denied the post-trial motion, and Total timely appeals.

## II.  DISCUSSION

We review the denial of a motion for judgment as a matter of law *de novo*.  *See* ***Voest-Alpine Trading USA Corp. v. Bank of China***, 142 F.3d 887, 891 (5th Cir.), *cert. denied*, 119 S. Ct. 591 (1998).  In this Circuit, "[a] motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."  ***Harrington v. Harris***, 118 F.3d 359, 367 (5th Cir.), *cert. denied*, 118 S. Ct. 603 (1997).  Applying the same standard as the district court would have on initial consideration of a motion for judgment as a matter of law, we examine the sufficiency of the evidence under the standard of ***Boeing Co. v. Shipman***, 411 F.2d 365 (5th Cir. 1969) (en banc), *overruled on other grounds by*, ***Gautreaux v. Scurlock Marine, Inc.***, 107 F.3d 331 (5th Cir. 1997) (en banc).  In ***Gaia Technologies, Inc. v. Recycled Prods. Corp.***, 175 F.3d 365, 374 (5th Cir. 1999), we recited the appropriate ***Boeing*** standard:

> Under ***Boeing***, we must find a conflict in substantial evidence to create a jury question. Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.  Consequently, a mere scintilla of evidence is insufficient to present a question for the jury.  Even if the evidence is more than a scintilla, ***Boeing*** assumes that some

8

> evidence may exist to support a position which is yet so overwhelmed by contrary proof as to yield to a [motion for judgment as a matter of law].

*Id.* (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc)) (quotations and citations omitted). We consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party. *See Rhodes*, 75 F.3d at 993. And where the district court's jurisdiction was originally founded upon diversity of citizenship between the parties, like the district court, we apply state law to the facts as found. *See Powers v. Vista Chem. Co.*, 109 F.3d 1089, 1093 (5th Cir. 1997).

Under Texas premises liability law, a merchant owes its invitees a duty to exercise reasonable care to protect them against dangerous store conditions known or discoverable to the merchant. *See Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998) (citing *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536-37 (Tex. 1975)). And to recover damages against a store owner in a slip-and-fall case, a plaintiff bears the burden of establishing:

(1) Actual or constructive knowledge of some condition on the premises by the owner/operator;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

9

*Gonzalez*, 968 S.W.2d at 936 (quoting *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). Only the first of these four elements, that is, Total's actual or constructive knowledge of the presence of water, is at issue in this case.

Under Texas law, a premises owner's knowledge of a potentially harmful condition can be established in one of the following three ways: (1) proof that employees caused the harmful condition; (2) proof that employees either saw or were told of the harmful condition prior to the plaintiff's injury therefrom; or (3) proof that the harmful condition was present for so long that it should have been discovered in the exercise of reasonable care. *See Keetch*, 845 S.W.2d at 264. The third scenario is the only one upon which liability could be based in this case, as the record is devoid of any evidence that Total's employees caused, observed, or were made aware of any water on the men's restroom floor which allegedly caused Mr. Threlkeld's slip and fall.

To support their claim that Total had constructive knowledge of the presence of the water, the Threlkelds rely exclusively upon their own testimony that the water "looked as if it had been there for a while," and upon the testimony of one of Total's employees that had the bathroom been in the condition the Threlkelds described when she inspected it, she most certainly would have noticed it. Total contends that Texas case law, which specifically defines the character and quantity of evidence, i.e., the

10

"substantial evidence" required under **Boeing** to defeat a motion for judgment as a matter of law in a Texas slip-and-fall jury verdict case, defeats the Threlkelds' claim. For the reasons discussed below, we agree with Total.

In **Wal-Mart Stores, Inc. v. Gonzalez**, the Texas Supreme Court addressed "what quantum of circumstantial evidence is legally sufficient to support a finding that an unreasonably dangerous condition has existed long enough to charge a proprietor with constructive notice of the condition." **Gonzalez**, 968 S.W.2d at 935. The Texas Supreme Court concluded that when a plaintiff relies on circumstantial evidence to establish an owner's constructive knowledge of a dangerous condition, the evidence "must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." **Id.** at 936.

In the **Gonzalez** case, Flora Gonzalez, while patronizing her local Wal-Mart, allegedly slipped and fell in a pile of cooked macaroni salad while walking down a busy aisle from the cafeteria toward a store refrigerator. See **id.** Gonzalez was injured, sued Wal-Mart for negligence, and ultimately received a $100,000 jury verdict. See **id.** Wal-Mart argued on appeal that the evidence was insufficient to establish that the macaroni salad had been present on the floor long enough to charge it with constructive notice. See **id.**

11

In the *Gonzalez* case, no witness testified that they had either seen or been aware of the macaroni salad's presence prior to Ms. Gonzalez's fall. *See id.* Gonzalez herself testified that the macaroni salad was "fresh," "wet," "still humid," and contained dirt. *See id.* Her daughter testified that there were footprints and cart tracks in the macaroni salad, and stated that it "seemed like it had been there a while." *See id.*

The Texas Supreme Court, reviewing the evidence in a light most favorable to the verdict, concluded that Gonzalez's evidence "can no more support the inference that [the macaroni salad] accumulated dirt over a long period of time than it can support the opposite inference that the macaroni had just been dropped on the floor and was quickly contaminated by customers and carts traversing the aisle." *Id.* at 937. Evidence of the presence of dirt in the macaroni and the subjective testimony that it just "seemed like it had been there awhile," according to the Court, was "no evidence that the macaroni had been on the floor long enough to charge Wal-Mart with constructive notice of this condition." *Id.* at 938.

The harsh reality, noted the Texas Supreme Court, is that if a plaintiff cannot prove facts to establish that it is more likely than not that the dangerous condition existed long enough that a proprietor should have known of its presence, there is simply no basis for recovery. *See Gonzalez*, 968 S.W.2d at 938. And, if like

12

Gonzalez's, a plaintiff's evidence establishes only the possibility that a dangerous condition was present long enough to provide constructive notice, such evidence is legally insufficient to sustain a judgment based on a jury's verdict against the proprietor.

In its motions for judgment as a matter of law, Total argued that the Threlkelds failed to present any evidence that it was more likely than not that the water in which Mr. Threlkeld allegedly slipped had been present long enough that Total should have discovered it in the exercise of reasonable care.

Our review of the record evidence in this case reveals that Mr. Threlkeld admitted he did not know how the water came to be on the floor or how long it had been present. He simply stated that based upon the condition of the bathroom (i.e., the dirty commode) he "believed" that the water must have been on the floor for "some time." Yet he later admitted that he had "no way of knowing" how long the water may have been present. Mrs. Threlkeld conceded during cross-examination that she likewise had no way of knowing how long the water was on the floor, and that it was entirely possible that a customer immediately preceding Mr. Threlkeld could have caused the water on the floor. She also noted that the women's restroom was clean and well maintained, contradicting the implication that Total was neglectful about maintaining and inspecting the restrooms.

Mr. Threlkeld's evidence that the commode needed attention is

13

no evidence regarding Total's constructive knowledge of the presence of water on the floor of the restroom. And, like the plaintiff's testimony in *Gonzalez*, his subjective belief that the dangerous condition may have been there for awhile is no more indicative that the water had been on the floor for a long enough period of time so as to give Total constructive knowledge of it, than it is of the opposite proposition, that the water appeared on the floor as a result of a previous patron's use within seconds or minutes of Mr. Threlkeld's arrival in the restroom.

While the Texas Supreme Court has explicitly held that testimony regarding cart marks and footprints in spilled material is not sufficient to establish that a spill existed for so long a period of time as to impart construct knowledge to the proprietor, Mr. Threlkeld's testimony serves to bolster the opposite proposition, i.e., that the water on the floor may have been present for only a short while. He stated that the water on the floor was located where restroom patrons would necessarily have had to trod in order to enter the restroom, and he conceded that the water was neither discolored nor contained any footprints or track marks. Thus, Mr. Threlkeld's own testimony equally supports the opposing inference that the water appeared only a short time before he arrived in the men's restroom.

The Threlkelds rely alternatively on a statement made by Ms. Arnold that if the restroom had been in the condition Mr. Threlkeld

14

described when she last inspected it, she most certainly would have noticed it. This statement indicates nothing more than, that at the time Ms. Arnold inspected the men's restroom, it was not in the condition Mr. Threlkeld alleges. There is ample evidence in the record that very shortly before Mr. Threlkeld's fall, the restroom had been the subject of a safety committee inspection by the regional safety director between 8:00 a.m. and 10:00 a.m., that the two employees on duty that morning had cleaned the restroom between 9:00 a.m. and 10:00 a.m., and that the employees inspected the restroom and found no dangerous condition between 10:30 a.m. and 11:00 a.m. At worst, the evidence reveals that the restroom went unobserved by Total employees for, at the most, forty-five minutes.[4]

Construing all of the evidence in a light most favorable to the Threlkelds, we fail to see how a reasonable juror could conclude that it was more likely than not that the alleged water on the bathroom floor was present for so long a time as to give Total actual or constructive knowledge of its presence under Texas law. The Threlkelds' testimony that it "looked like the water had been present for awhile," and the other evidence upon which they rely, suffers from the same defects noted by the Texas Supreme Court in *Gonzalez*. It is entirely subjective and it no more supports an

---

[4]  Assuming the last inspection was at 10:30 a.m., forty-five minutes elapsed before Mr. Threlkeld fell at 11:15 a.m.

15

inference that the dangerous condition existed for so long a time as to charge Total with constructive knowledge than it supports the opposite inference that the dangerous condition appeared only moments before the accident. And as the Texas Supreme Court noted in *Gonzalez*, such "meager evidence, from which equally plausible but opposite inferences may be drawn" is no evidence that Total had constructive knowledge of the dangerous condition, and thus, is legally insufficient to support such a finding. *See Gonzalez*, 968 S.W.2d at 936.

We conclude, therefore, that sitting in diversity, and bound to apply Texas state law regarding premises liability, the district court was not at liberty to bypass or ignore the strictures of the rule announced by the Texas Supreme Court in *Gonzalez*. As the Threlkeld's presented no competent evidence from which a finding of constructive knowledge of the presence of water could be drawn, Total was entitled to judgment as a matter of law, and the district court erred in denying Total's motion therefor.

Accordingly, the judgment entered by the district court will be reversed and this matter will be remanded for entry of judgment in favor of Total Petroleum. As a result of our decision in this regard, Total's remaining issues, that is, whether there was competent evidence of Mr. Threlkeld's lost earning capacity, and whether Mrs. Threlkeld was entitled to recover the value of her nursing services, are rendered moot.

16

### III. CONCLUSION

For all of the foregoing reasons, we REVERSE the judgment entered by the district court in favor of the Threlkelds and REMAND this case for entry of a judgment in favor of Total Petroleum.