# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2024

Lyle W. Cayce
Clerk

———————

No. 23-40250

———————

Jesus Alonzo,

*Plaintiff—Appellant*,

*versus*

Cajun Operating Company, et al.,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:20-CV-0407

———————————————————————

Before Richman, *Chief Judge*, Stewart, *Circuit Judge*, and Hanks, *District Judge*.[*]

Per Curiam:[**]

In this slip-and-fall case governed by Texas premises-liability law, plaintiff Jesus Alonzo appeals the district court's grant of defendant's renewed motion for judgment as a matter of law following a jury verdict in favor of Alonzo. We AFFIRM.

---

[*] United States District Judge for the Southern District of Texas, sitting by designation.

[**] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-40250

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The relevant facts, which we consider in the light most favorable to the jury verdict, are as follows. *See Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 799 F.3d 374, 376 (5th Cir. 2015). Alonzo was on his way to the restroom at a Church's Chicken restaurant owned and operated by Defendant-Appellee Cajun Operating Company ("Church's") when he slipped and fell backwards in the approximately two-to-three-foot-wide hallway that contained both the restroom and the door to the kitchen. In the end, Alonzo "didn't actually fall because [he] put one hand on the floor, and [he] kind of was holding [him]self so – and [he] kind of turned around, and then something snapped, and [he] really got a lot of pain in [his] lower back." An employee who was on her way to the kitchen saw Alonzo fall, but she just looked at him and did not ask him anything. (That employee was not identified at trial and did not testify at trial.)

Alonzo stood up and "saw that [he] was wet" and the hand he had placed on the floor to break his fall "was wet with water and then grease." He said, "It seemed like they had maybe mopped or something, but they had not put an announcement or some sort of warning that . . . be careful, it's wet, or something like that." He agreed that he thought the water and grease on the floor caused him to slip and fall. Alonzo's companion, who also did not testify at trial, tried to report the fall to Church's but was not successful at that time. Alonzo returned to the Church's with a police officer later that evening, and the evening manager interviewed Alonzo and made an incident report.

The evening manager was Maria Gomez, who was assistant manager at Church's for at least ten years. She called in the report and said it would be "on the system" but not written down. She explained that although there is video camera surveillance in the restaurant, Alonzo fell in a place out of the

view of the camera. She was not at Church's when Alonzo slipped as her shift began at 4 p.m.

She did, however, testify at trial about floor inspection and mopping procedures at that Church's. Specifically, she said the floor was inspected every 30 minutes based on a timer: "We have a timer, it's a beeper that sounds every 30 minutes. Well, we press on it whenever we go to clean the lobby so that's inspecting it, and whenever we come back, we finished whatever and we come back and press on it again so it will be ready for another 30 minutes." If there is something found during the inspection, Gomez said "we literally are told to put a WET sign there, even if it's not wet, just to make it not [a] hazard." If there was a need to mop, Church's mopped using water mixed with Spic & Span floor cleaner, which is "for the grease." (She later stated that they "mop every 30 minutes" rather than just inspect.) Once an area had been mopped, it could not be greasy. Even though Gomez agreed that the mop tends to collect grease over time even after it is rinsed out, she denied that the mop would leave grease on the floor even though the mop itself could be greasy.

Gomez agreed that the floors at Church's get greasy from time to time, that grease gets on employees' shoes and that, if they work in the kitchen, the soles of their shoes are "always going to have some grease." In response to a question about grease collecting because of employees walking in and out of the kitchen, Gomez stated that the "grease there is not slippery" because the floor was a "special tile" floor and "even if it has grease, it doesn't slip." She later conceded, however, that that special tile could get slippery if it is dirty. She further agreed that "[i]f it were not for mopping there would always be grease on that floor" and that the floor is also wet (and therefore slippery and dangerous for customers) from time to time because a mop is used on the floor. She also agreed that it would have been a

violation of Church's policy if signs were not put up if the floors were mopped at the time.

In Gomez's experience, Church's serves from 200 to 300 customers per day. Gomez stated that no one else that day, that week, or that year had complained about wet or greasy floors. She also said there had never been a slip and fall at that Church's location in the ten years she had been assistant manager there. She did later, however, state that she had previously slipped on grease in the kitchen.

\* \* \*

At the conclusion of Alonzo's case-in-chief, Church's moved orally for judgment as a matter of law, and the court denied the motion. The same day, Church's filed a written motion for judgment as a matter of law. The court denied the written motion the following morning. Immediately before the court delivered charging instructions to the jury, Church's orally renewed its motion for judgment as a matter of law, and the court denied it. The jury rendered a verdict for Alonzo. Church's timely filed a renewed motion for judgment as a matter of law arguing that "Alonzo lacks substantial evidence of an essential element for his claim: that Church's had actual or constructive knowledge that the alleged substance was on the floor in the area where Alonzo allegedly slipped and fell." Alonzo responded, and Church's replied. The district court granted Church's motion. Alonzo timely filed a notice of appeal.

## LEGAL STANDARD

This court reviews de novo a district court's ruling on a motion for judgment as a matter of law. *CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 349 (5th Cir. 2021). "Judgment as a matter of law may be granted when a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to

find for the party on that issue." *Kelso v. Butler*, 899 F.3d 420, 424 (5th Cir. 2018); *see* FED. R. CIV. P. 50(a)(1). "In evaluating the district court's grant of judgment as a matter of law, we 'consider all of the evidence (and not just that evidence which supports the non-mover's case) in the light most favorable to the non-movant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts to the jury.'" *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 615–16 (5th Cir. 2023) (quoting *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir. 1997)).

"A mere scintilla of evidence is insufficient to present a question for the jury." *Rex Real Est. I, L.P.*, 80 F.4th at 616. In order to survive a Rule 50 motion, "the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of their claim." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011). "In other words, the evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture." *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018). "Even if the evidence is more than a scintilla, . . . some evidence may exist to support a position which is yet so overwhelmed by contrary proof as to yield to a [motion for judgment as a matter of law]." *Rogers v. McDorman*, 521 F.3d 381, 391 (5th Cir. 2008) (alteration in original) (quoting *Gaia Techs. Inc. v. Recycled Prods. Corp.,* 175 F.3d 365, 374–75 (5th Cir. 1999)).

"[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is

the same.'" *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251 (1986)).

## ANALYSIS

The district court concluded that legally sufficient evidence was not presented on the knowledge element of Alonzo's premises-liability claim. We agree. Accordingly, we conclude that the district court properly granted Church's renewed motion for judgment as a matter of law.

In a diversity action like this one, the court must apply the substantive law of the forum state, in this case Texas. *CBE Grp., Inc.*, 993 F.3d at 350; *see Goodner*, 650 F.3d at 1040 (explaining that a court sitting in diversity "refers to state law for the kind of evidence that must be produced to support a verdict").

To "prevail in a premises-liability case, an invitee must prove that the premises owner had actual or constructive knowledge of a dangerous condition on the premises." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 813 (Tex. 2002). A slip-and-fall plaintiff satisfies this "element by establishing that (1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Id.* at 814. In some exceptional cases, a plaintiff can meet this element by "introducing evidence that a proximate cause of the fall was the storeowner's failure to use reasonable care to protect its customers from the known and unusually high risks accompanying customer usage of a self-service display of goods." *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983).

"Plaintiffs may rely upon both direct and circumstantial evidence of a defendant's knowledge." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017). "Circumstantial evidence must 'either directly or by

reasonable inference' support the conclusion that the defendant had knowledge of the alleged risk." *Id.* (quoting *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 394 (Tex. 2016)). "An inference is not reasonable if premised on mere suspicion—some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." *Id.* (internal quotation marks omitted).

Alonzo conceded at oral argument that there is no direct evidence of Defendant's knowledge in this case.

*—Evidence that Church's placed the substance on the floor*

The record does not contain legally sufficient evidence that Church's placed the substance on the floor.

There is no direct evidence available in the record regarding the substance on the hallway floor. The relevant circumstantial evidence in the record is sparse and can be summed up as follows:

(1) Alonzo believed his hand was "wet with water and then grease" and it "*seemed* like they had *maybe* mopped or *something*, but they had not put an announcement or some sort of warning that . . . be careful, it's wet, or something like that" (emphasis added);

(2) grease gets on employees' shoes, and, if they work in the kitchen, the soles of their shoes are "always going to have some grease";

(3) the Church's employee who testified had previously slipped on grease in the kitchen;

(4) the floors at Church's get greasy from time to time and if "it were not for mopping there would always be grease on that floor";

(5) once an area had been mopped, it could not be greasy;

(6) Church's inspects and/or mops the floor every 30 minutes (prompted by a timer) using water mixed with a floor cleaner for the grease, and, if something is found during an inspection, employees are told to "put a WET sign there, even if it's not wet, just to make it not [a] hazard"; and

(7) from time to time the floor is wet (and therefore slippery) because a mop is used on the floor, and it is a violation of Church's policy if signs are not put up when the floors are mopped.

In *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 357 (5th Cir. 2017), this court addressed actual and constructive knowledge in a factually-similar premises-liability case. In that case, a plaintiff fell while walking to the restrooms, which required her to pass the restaurant's kitchen. *McCarty*, 864 F.3d at 357. She alleged that some substance on the floor outside the restaurant's kitchen and restrooms caused her crutch to slip from underneath her. *Id.* The court found that the summary judgment record did not contain sufficient evidence for a jury to conclude the restaurant placed the substance. *Id.* at 359. Specifically, the court found that evidence that (1) a restaurant manager acknowledged that it was possible that employees tracked food and water from the restaurant's kitchen floor or spilled liquid from drinks in the area where the plaintiff fell and (2) restaurant employees testified that while moving between the kitchen and seating areas, wait staff frequently traversed the same area raised "[a]t best" "a mere suspicion that restaurant employees might have tracked or spilled a foreign substance where the fall occurred." *Id.* ("What evidence the record does contain about how a foreign substance might have gotten onto the floor is simply too speculative.").

Here, as in *McCarty*, the few pieces of circumstantial evidence do not directly or by reasonable inference support the conclusion that Church's placed the substance in the hallway. As the district court succinctly

explained, "the circumstances relied on by Plaintiff—the nature of the restaurant, its layout, and the cleaning procedures—are so slight as to raise nothing more than speculation that employees tracked grease, applied mop water, or were otherwise actually aware of the wet, greasy area." The evidence at best raises the mere suspicion that an employee who had gotten grease on his shoes might have walked in the spot where Alonzo fell and left grease on the floor before Church's 30-minute inspection and/or mopping. Or it raises the mere suspicion that the floor was wet because an employee had mopped the spot where Alonzo fell, possibly to remove grease (or possibly to remove another hazard), but for some reason had violated Church's policy by not putting up a sign. But even linking suspicion to other suspicion does not get to where Alonzo would like to be, that is, a reasonable inference that Church's placed water and grease on the floor together. In fact, testimony from Church's employee shows that once an area had been mopped, it could not be greasy.

The three alternative theories that Alonzo advances as to how Church's placed the dangerous condition on the floor only clarifies that a jury would have to rest on "mere speculation and conjecture" to conclude that Church's placed the water-and-grease substance where Alonzo slipped. *See Anthony v. Chevron USA, Inc.*, 284 F.3d at 583. As one example, Alonzo posits that a jury could have concluded that the floor was "wet and/or greasy" because (1) after an employee mops "water is on the floor, water does not evaporate immediately and would remain in aggregate wet for [a] portion of the day," (2) "a certain process is required to remove grease from the floor to render it not slippery" so "if an employee did not follow this process when mopping, then the floor would be wet and greasy," and (3) the "floor was in fact wet and greasy." The record does not contain any evidence about water evaporating from or aggregating on Church's floors. Nor does the record contain any evidence from which a jury could reasonably infer that

Church's employees mopped the area where Alonzo fell but did not use floor cleaner *and* did not put up a WET sign. A jury could only reach the conclusion that Alonzo advocates by making a series of speculations.

Thus, the circumstantial evidence is legally insufficient for a jury to find that Church's placed the substance on its floor.

*—Evidence that Church's actually knew the substance was on the floor*

The record is also bereft of any evidence that any Church's employee actually knew that a wet, greasy substance was on the floor where Alonzo fell.

"The actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time." *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006). "[A]wareness of a potential problem is not actual knowledge of an existing danger." *Sampson v. Univ. of Texas at Austin*, 500 S.W.3d 380, 396 (Tex. 2016).

As the district court correctly pointed out, "[m]ere knowledge that grease was prone to collect along the hallway is not the same as actual knowledge of the condition itself, i.e., that employees were aware that grease had in fact accumulated." In the same vein, the mere fact that Church's knew that grease gets on employees' shoes, there would always be grease on the floor if not for mopping, and the floors are wet and slippery from time to time when they are mopped is no evidence that Church's actually knew grease and/or water was on the floor at the time of the accident. *See, e.g.*, *id.* (the fact that employees "discussed methods of stringing the cord—through the trees above the walkway, in order to avoid a tripping hazard—does not create actual knowledge that the decision to lay the cord on the ground created a dangerous condition"); *City of Denton v. Paper*, 376 S.W.3d 762, 767 (Tex. 2012) ("The City arguably knew that the repaired area of the street might sink again but 'the actual knowledge required for liability is of the dangerous

condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time'" (quoting *Reyes v. City of Laredo*, 335 S.W.3d 605, 608 (Tex. 2010))); *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002) (finding that "evidence that [the State] knew the signs had been repeatedly vandalized does not indicate, either directly or by reasonable inference, that [the State] actually knew the signs were down before the accident occurred").

—*Evidence that it is more likely than not that the condition existed long enough to give Church's a reasonable opportunity to discover it*

The district court correctly determined that no legally sufficient evidence of longevity of the hazard was presented and therefore that the record was "without a temporal basis on which to impute [Church's] with constructive knowledge."

Constructive knowledge is a substitute in the law for actual knowledge. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102 (Tex. 2000). It "requires proof that an owner had a reasonable opportunity to discover the defect" and it "requires analyzing the combination of proximity, conspicuity, and longevity." *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567 (Tex. 2006). Significantly, however, the "rule in Texas is that temporal evidence, not proximity evidence, is the *sine qua non* of a premises owner's constructive knowledge." *Dixon v. Wal-Mart Stores, Inc.*, 330 F.3d 311, 315 (5th Cir. 2003) (citing *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002)). "Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002) ("[T]here must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition.").

When "circumstantial evidence is relied upon to prove constructive notice, the evidence must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998) (rendering judgment for Wal-Mart where court concluded "that the circumstantial evidence in th[e] case supports only the *possibility* that the dangerous condition existed long enough to give Wal–Mart a reasonable opportunity to discover it"). "'[M]eager evidence, from which equally plausible but opposite inferences may be drawn' is no evidence that [a defendant] had constructive knowledge of the dangerous condition, and thus, is legally insufficient to support such a finding." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 894 (5th Cir. 2000) (citing *Gonzalez*, 968 S.W.2d at 936).

The circumstantial evidence here is not legally sufficient to establish that it is more likely than not that the grease-and-water substance was on the floor long enough to give Church's a reasonable opportunity to discover it. The only evidence in the record that contains a time element is the 30-minute inspection-and-mopping schedule that the Church's employee testified about. And, as the district court correctly explained, the "factual gap in the record is too wide to make [the] inferential leap" that "the wet and greasy substance was on the floor for thirty minutes based on the inspection schedule." Specifically, the district court noted that there is no evidence in the record as to when the schedule began running, when the hallways would have been accordingly inspected, what if anything an inspection revealed, and whether the area was actually mopped.

On appeal, Alonzo attempts to overcome the lack of legally sufficient evidence in the record regarding how long the grease-and-water substance was on the floor by characterizing it as an ongoing condition that is *always* on the floor. He relies primarily on (1) his own testimony that "it seemed like

they had maybe mopped or something," (2) the Church's employee's statements regarding the 30-minute inspection-and-mopping schedule, and (3) the Church's employee's testimony regarding grease, e.g., that grease is on employees' shoes and would always be on the floor if not for mopping.[1]

As an initial matter, Alonzo's subjective beliefs cannot provide evidence of longevity. In *Wal-Mart Stores, Inc. v. Gonzalez*, for example, the Texas Supreme Court held that subjective testimony that the macaroni salad, on which Gonzalez had slipped, "seemed like it had been there awhile" was "no evidence that the macaroni had been on the floor long enough to charge Wal-Mart with constructive notice of this condition." 968 S.W.2d 934, 938 (Tex. 1998). Specifically, the court found that testimony was a "mere speculative, subjective opinion of no evidentiary value" where the "witnesses had not seen the macaroni salad prior to the fall and had no personal knowledge of the length of time it had been on the floor." *Id.* at 937–938. Similarly, this court found that a witness's "subjective belief that the dangerous condition may have been there for awhile is no more indicative that the water had been on the floor for a long enough period of time so as to give [the defendant] constructive knowledge of it, than it is of the opposite proposition, that the water appeared on the floor as a result of a previous patron's use within seconds or minutes of [the witness's] arrival in the restroom." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 893 (5th Cir. 2000).

---

[1] Alonzo also posits that Gomez testified that the store is mopped every 30 minutes "because it would be more likely that grease would be in the space through which the employees all must walk" and that "[g]rease collects on the floor because of the employees walking in and out of the kitchen and is present on the floor between moppings." Alonzo is inferring that Gomez agreed to these statements when he asked them of her on recross because Gomez did not deny them.

Here, Alonzo's testimony that it "seemed like they had maybe mopped or something," is, like the testimony in *Gonzalez*, a "mere speculative, subjective opinion of no evidentiary value." 968 S.W.2d at 937–938. There is no evidence that anyone saw the wet, greasy substance before Alonzo fell, that anyone had actually "mopped or something" leading up to Alonzo's fall, or that anyone had personal knowledge of the length of time the substance had been on the floor or the last time the floor was mopped. Like the witness's testimony in *Threlkeld*, Alonzo's testimony that it "seemed like they had mopped" could just as easily support the proposition that another customer had unsuccessfully tried to wipe up dropped food and drink right before Alonzo arrived, leaving a wet, greasy floor behind.

Additionally, Alonzo's assertion that water and grease are always on the floor is also no evidence of longevity because it is based on speculative leaps he takes from the meager circumstantial evidence in the record, e.g., that employees mopped and/or inspected every thirty minutes and that grease would accumulate but for mopping. He argues with no support that "[w]ater does not instantly evaporate, and thus [a] puddle must have been on the floor for some portion of the last hour and of every hour, constituting an ongoing condition." And he guesses that "a mop puddle tends to be thin, spread out, and have streaks in it, while a spill tends to be a deeper puddle with splashes around it." His assertion that grease is always on the floor is similarly based on speculative jumps from some of the Church's employee's testimony combined with his selective disregard for other of her testimony. For example, he ignores Gomez's testimony that the floors are not greasy after mopping. He also ignores her testimony that the floors are inspected every half an hour and that a "WET sign" is placed if something on the floor requires cleanup. And he ignores that the employee said "no" when asked whether "there is always grease on that hallway."

Furthermore, if "circumstantial evidence supports only the *possibility* that the dangerous condition existed long enough to give [the premises owner] a reasonable opportunity to discover it, the premises owner cannot be charged with constructive notice." *McCarty,* 864 F.3d at 360. For example, the Texas Supreme Court found that "[d]irt in macaroni salad lying on a heavily-traveled aisle is no evidence of the length of time the macaroni had been on the floor" because "that evidence can no more support the inference that it accumulated dirt over a long period of time than it can support the opposite inference that the macaroni had just been dropped on the floor and was quickly contaminated by customers and carts traversing the aisle." *Gonzalez*, 968 S.W.2d at 937.

Here, as was the case in *Gonzalez*, the meager circumstantial evidence that Alonzo uses as a jumping off point to support his conjecture that the grease-and-water substance is perpetually on the floor could just as easily support an opposite inference that Church's floors were not wet and not greasy and instead another one of the 200 to 300 customers that Church's served that day had tried unsuccessfully to wipe up some food and drink that she had dropped before Alonzo arrived in the hallway, leaving behind a wet, greasy floor. *See Threlkeld*, 211 F.3d at 894.

—*High Risk of Dangerous Condition*

On appeal, Alonzo argues, citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 294 (Tex. 1983), a case involving a self-service display of loose grapes, that even in the absence of actual or constructive knowledge, an owner can still be held liable if the plaintiff can show that the owner was "aware of a high risk that the dangerous condition would occur" and appears to assert that "the manner in which food is prepared in the Church's restaurant" creates the condition of wet, greasy floors. Alonzo did not raise this argument below and thus forfeited it. *See Rollins v. Home Depot USA*, 8

No. 23-40250

F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal.").

Regardless, however, *Corbin* is inapplicable here where the floor at Church's was not a "dangerous condition from the moment it was used" and Church's has not admitted that there is an unusually high risk associated with its floors. *See Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006) (explaining that the decision in *Corbin* was different from that issued by the Texas Supreme Court in another case involving a self-service display of loose grapes because "the store in *Corbin* admitted there was an unusually high risk associated with its grape display"); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000) (distinguishing *Corbin* as the grape display in that case "constituted a dangerous condition from the moment it was used").

Indeed, even if Church's had admitted that grease and water were prone to spill on the floor and that that was a hazard that had to be cleaned up regularly, that would still not be enough to establish that that floor at Church's was an "unreasonably dangerous condition" like the self-service display in *Corbin*. *See Taylor*, 222 S.W.3d at 407–409 (finding that ice, not soft drink dispenser, was the only unreasonably dangerous condition even where grocery employee admitted that ice fell from dispenser on daily basis and ice on floor was a hazard to customers that had to be cleaned up regularly).

## CONCLUSION

We AFFIRM the district court's judgment.